```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                      EASTERN DIVISION
```

Marlin A. Tisdale,            :

    Plaintiff,            :

  v.                          :    Case No. 2:16-cv-0346

Commissioner of Social Security,:   JUDGE ALGENON L. MARBLEY
                                               Magistrate Judge Kemp
    Defendant.            :

## REPORT AND RECOMMENDATION

### I. Introduction

Plaintiff, Marlin A. Tisdale, filed this action seeking review of a decision of the Commissioner of Social Security denying his application for disability insurance benefits. That application was filed on December 21, 2011, and alleged that Plaintiff became disabled on February 9, 2011.

After initial administrative denials of his claim, Plaintiff was given a hearing before an Administrative Law Judge on April 11, 2014. In a decision dated September 25, 2014, the ALJ denied benefits. That became the Commissioner's final decision on February 19, 2016, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on June 27, 2016. Plaintiff filed a statement of specific errors on October 14, 2016. The Commissioner responded on December 23, 2016. Plaintiff has not filed a reply brief, and the case is now ready to decide.

### II. Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 53 years old as of the date of the hearing and who has a high school education, testified as follows. His testimony appears at pages 52-64 of the administrative record.

Plaintiff first testified that he had been working on a part-time basis until 2011, due to physical limitations, and that he stopped working altogether in 2011. By then, if he worked a half day, he could not work the next. He said that he experienced pain in his lower back which radiated into his right leg. His treatment had included two epidural steroid injections, the first of which worked well, and manipulation of his back. He was also taking over-the-counter medication and using a TENS unit.

Asked what made his pain worse, Plaintiff replied that standing or walking did so, as did sitting, bending, or stooping. He thought he could stand for thirty minutes at a time and he could tolerate sitting for an hour and half, although he still had pain. He could walk about three blocks, but not without stopping at least once. Around the house, Plaintiff helped with chores, but only for fifteen minutes at a time. He could also do a little yard work.

Plaintiff was also asked about depression. He had stopped going to a counselor, but said he still did not like being around people and had occasional crying spells. He left the house on a daily basis to walk to the post office and to check on his mother. He had discontinued sports activities like softball, golf, and bowling.

### III.  The Medical Records

The pertinent medical records are found beginning at page 258 of the record. They can be summarized as follows. Because Plaintiff's two claims of error relate only to his psychological impairment, the Court will limit its review to records related to that issue.

Plaintiff was seen at Weinstein & Associates, Inc. in 2011 for treatment of a depressive disorder. A summary from a June 21, 2011 visit, signed by Donald J. Cutcher, M.A., and Keli A.

Yee, Psy.D., shows that Plaintiff had decreased his activities of daily living due to physical limitations. He was experiencing problems with reduced motivation and energy. His concentration was significantly reduced and he was easily distracted. His affect was constricted and his mood was depressed. Plaintiff was also having some issues with socialization and he reported poor stress tolerance. He had made progress in some areas and had seen an improvement in anger management. His prognosis was fair. Other notes from that practice from 2011 are similar. There is a note from Dr. Yee dated December 14, 2011, stating that Plaintiff's symptoms are "work prohibitive," and another stating that "his mood symptoms would negatively impact his ability to deal with work related stressors." (Tr. 259-64, 369, 389). On March 14, 2012, Dr. Yee stated that Plaintiff's "mood symptoms are currently work prohibitive...." (Tr. 431).

Dr. Richetta, also a psychologist, wrote a letter to Plaintiff's counsel in 2011 concerning a clinical interview which apparently took place in connection with Plaintiff's workers' compensation claim. Plaintiff reported feeling depressed and down on a daily basis and had tearful episodes every other day. He was seeing Dr. Yee every few months and a counselor every few weeks. He was taking antidepressant medication. Plaintiff's demeanor confirmed his depression. He reported problems with concentration, persistence, and pace, which Dr. Richetta described as moderate. Plaintiff said that he was frequently overwhelmed and withdrawn. Dr. Richetta concluded that Plaintiff's impairment in dealing with work stress was moderate to marked. He also concluded that Plaintiff was "permanently and totally disabled from sustained remunerative activities." (Tr. 278-81).

Two state agency psychologists also expressed opinions about Plaintiff's mental residual functional capacity. Dr. Johnston,

who did not seem to acknowledge the existence of any opinions from Dr. Yee (the only opinion she discussed was that of Dr. Richetta), concluded that Plaintiff would perform best in a setting where changes were infrequent and easily explained, where social interactions were brief, and where job instructions were simple to moderately complex, all in a setting which was routine and relatively static without a fast pace. (Tr. 80-82). Dr. Swain, considering the same evidence, reached the same conclusion. (Tr. 96-98).

### IV. The Medical Testimony

Two medical experts testified at the administrative hearing. The first was Dr. Slodki, whose testimony begins at page 38 of the record.

Dr. Slodki was asked to determine from the records what medically determinable impairments existed. He said that Plaintiff suffered an acute back injury at work and had chronic back problems plus radiculopathy. He also suffered from dyslipidemia, hypertension, obesity, and chronic pain syndrome, plus psychological impairments that would be addressed by the second medical expert.

Dr. Slodki was then asked to rate the severity of these impairments. He testified that Plaintiff should be able to do light work. He did not comment on the extent to which pain would produce more limitations, indicating that such a determination was reserved to the ALJ because it was a matter of credibility.

The second medical expert was Dr. Cremerius, whose testimony begins at page 45. He noted that Plaintiff was treated for a mental impairment only from 2010 to 2012, and that the records document a depressive disorder, primarily in reaction to physical impairments. There was no evidence that the severity of his depression changed either for the worse or for the better.

Dr. Cremerius further testified that Plaintiff's depression

caused a mild limitation in activities of daily living, a moderate impairment in social interaction, and moderate limitations in concentration, persistence, and pace. That would limit him to the performance of simple, routine tasks in settings with only incidental contact with the public and occasional contact with supervisors and coworkers. He could do such tasks at whatever pace was required.

### V. The Vocational Testimony

Aimee Mowery was called to testify as a vocational expert at the administrative hearing. Her testimony begins at page 64 of the administrative record.

Ms. Mowery first testified about Plaintiff's past work. She said that he worked as a maintenance laborer, which is a heavy, unskilled job as typically done, although Plaintiff performed it at the light exertional level. He had also been a heavy equipment operator, which was a skilled, medium occupation, although Plaintiff did that job at the heavy exertional level.

Ms. Mowery was next asked questions about a hypothetical person with Plaintiff's age, education, and experience who could perform work as described by the medical expert, Dr. Slodki. She said those restrictions would preclude that person from doing Plaintiff's past relevant work. However, there would still be jobs that someone with those limitations could perform, including small parts assembler, folder, and office helper. She also testified to the number of such jobs which existed in the State economy and in the national economy. None of those jobs involved more than incidental contact with the general public or more than occasional contact with supervisors and co-workers.

Finally, Ms. Mowery was asked questions about someone who had various limitations, including not being able to lift more than ten pounds, not being able to stand or walk more than two hours in a workday, or not being able to twist and being able to

stoop, bend, crouch, and climb stairs only occasionally.  She said that all of those limitations were inconsistent with the ability to perform light work.  She also agreed that someone who had to take four or five unscheduled breaks during the day in order to lie down and rest could not be employed competitively.

## VI. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 11-29 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff meets the insured status requirements of the Social Security Act through the date of decision.  Second, he found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date.  Going to the next step of the sequential evaluation process, the ALJ concluded that Plaintiff had severe physical impairments including chronic complaints of back pain and moderate obesity, and a severe affective disorder associated with his chronic pain syndrome.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff could perform light work except that he could not climb ropes, ladders, or scaffolds, and could not climb stairs and ramps or balance, stoop, kneel, crouch, or crawl more than frequently.  He also was limited to carrying out simple, routine tasks so long as they did not require a fast pace, more than incidental contact with the public, or more than occasional contact with supervisors or coworkers.

With these restrictions, the ALJ concluded that Plaintiff could not perform any of his past relevant work.  However,

-6-

relying on the vocational testimony, the ALJ found that Plaintiff could do certain light unskilled jobs including assembler of small parts, folder, and office helper, and that such jobs existed in significant numbers in the State of Ohio and in several regions of the national economy. That finding is inconsistent with a determination of disability. Consequently, the ALJ decided that Plaintiff was not entitled to benefits.

VII. Plaintiff's Statement of Specific Errors

In his statement of errors, Plaintiff raises these issues: (1) the ALJ's evaluation of Dr. Richetta's opinion is not based on substantial evidence and amounts to legal error; and (2) the ALJ failed to weigh the opinion of a treating source, Dr. Yee. These issues are evaluated under the following legal standard.

Standard of Review. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human

-7-

Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

### A. Dr. Yee's Opinion

The Court will address Plaintiff's arguments in reverse order, because it finds the second to be dispositive. As his second statement of error, Plaintiff contends that the ALJ did not weigh the opinion of Dr. Yee, who had been Plaintiff's treating psychologist. The Commissioner argues that Dr. Yee never expressed the opinion which Plaintiff attributes to him, namely that Plaintiff had no ability to deal with work stress, asserting that this statement (Tr. 260) appears in a section of Dr. Yee's notes titled "Summary of functional status" and that it was intended to reflect only what Plaintiff said his symptoms were rather than an opinion by Dr. Yee that those statements were accurate. Since, in the Commissioner's view, that statement is not a "medical opinion," the ALJ was not obligated to treat it as such or to explain why he gave it no weight.

It is true that the specific statement identified in Plaintiff's argument in support of his second statement of error is the one found at Tr. 260. That statement is part of a report dated February 14, 2011, and it could well be read as a self-report rather than a medical opinion. It appears that is what the ALJ determined. (Tr. 20). The Court finds no error in that determination.

However, Plaintiff also refers, in his summary of the evidence, to the other statements made by Dr. Yee which are described above. The ALJ, too, acknowledged at least one of them, stating that "[w]hen seen on June 7, 2011, the claimant... felt his mood symptoms were work prohibitive." Id. In fact,

that statement is not found in the "Summary of symptoms" portion of the report, but in Dr. Yee's narrative, strongly indicating that it is a medical opinion. The same is true of the other times when Dr. Yee stated that Plaintiff could not work. The ALJ does not appear to have considered any of these statements to be opinions from a treating source. The only opinion evidence, apart from the opinions of the testifying psychologist and the state agency reviewers, which the ALJ discussed was that from Dr. Richetta. (Tr. 24-25).

The ALJ acknowledged that treating source opinions are entitled to the most evidentiary weight. However, the ALJ stated - incorrectly - that no treating source "has offered an opinion in support of the claimant's application ...." (Tr. 27). By not recognizing that Dr. Yee expressed an opinion about Plaintiff's symptoms which supported a finding that he could not work, the ALJ did not undertake the analysis required under 20 C.F.R. §404.4527(c), nor did he articulate "good reasons" for rejecting Dr. Yee's opinions. That is required in this Circuit. See Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004). The Commissioner has not advanced a harmless error analysis, and the Court does not view this error, which is a total failure to acknowledge and analyze the opinion of a treating source, as harmless. Consequently, this argument supports an order of remand.

### B. Dr. Richetta's Opinion

Plaintiff also argues that the ALJ did not properly weigh Dr. Richetta's opinion. He notes that the ALJ did not specifically assign it a weight, but, assuming that the ALJ gave it little or no weight, he contends that the ALJ's stated reasons for doing so are not supported by the evidence. The Commissioner responds that because Dr. Richetta was not a treating source, his opinion could not be given controlling weight, and that the reasons given by the ALJ for rejecting his conclusions - that

they were inconsistent both with the results of Dr. Richetta's examination and with the treatment notes from Dr. Yee - are consistent with the record.

This claim might or might not independently support a remand, but one of the bases for the ALJ's rejection of Dr. Richetta's conclusions - that they are inconsistent with Dr. Yee's notes - is at least partially mistaken.  Again, this appears to have resulted from the ALJ's failure to recognize that Dr. Yee expressed the opinion on multiple occasions that Plaintiff's symptoms were severe enough to prevent him from working.  That renders the ALJ's discussion of Dr. Richetta's opinion open to serious question.  On remand, the ALJ will have the opportunity to revisit this issue and to re-weigh Dr. Richetta's opinion in light of a more accurate understanding of Dr. Yee's notes.

## VIII.  Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained to the extent that this case be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. § 405(g), sentence four.

## IX.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a _de novo_ determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

<u>/s/ Terence P. Kemp</u>
United States Magistrate Judge
